

# The Attorney General of Texas

August 16, 1983

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Gibson D. Lewis
Speaker of the House
Texas House of Representatives
P. O. Box 2910
Austin, Texas   78769

Opinion No.   JM-60

Re:   Constitutionality of section 16.102(n) of the Education Code

Dear Speaker Lewis:

You have questioned the legality of section 16.102(n) of the Texas Education Code. This section is part of the Foundation School Program, and provides as follows:

> (n)  Notwithstanding Subsections (d) and (e) of this section, a school district that has 1,000 or fewer students in average daily attendance shall be allotted not less than 12 personnel units if it offers a kindergarten through grade 12 program and has a prior year's average daily attendance of at least 90 students or is 30 miles or more by bus route from the nearest high school district. A district offering a kindergarten through grade 8 program whose prior year's average daily attendance was at least 50 students or is 30 miles or more by bus route from the nearest high school district shall be allotted not less than 7.2 personnel units. Not less than 4.2 personnel units shall be allotted if a district offers a kindergarten through grade 6 program and has a prior year's average daily attendance of at least 40 students or is 30 miles or more by bus route from the nearest high school district. In addition, each school district that has 1,000 or fewer students in average daily attendance shall be allotted .6 personnel unit to be used cooperatively with other districts to provide support services necessary to meet accreditation standards.

Several letters and briefs concerning this opinion request have been submitted to this office. Essentially, the writers argue that section 16.102(n) violates both article I, section 3 and article VII,

section 1 of the Texas Constitution.   These two provisions state, respectively:

> All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services.
>
> . . . .
>
> A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools.

We conclude that section 16.102(n) of the Education Code does not violate either article I, section 3 or article VII, section 1 of the Texas Constitution.

The argument under article I, section 3, the state equal protection clause, essentially is that the legislature acted unconstitutionally in excluding those school districts eligible to receive a minimum of 12 personnel units funded by the state districts which operate a K-12 program, have fewer than 90 students in average daily attendance, and are less than 30 miles by bus route from the nearest high school district.   These districts receive some personnel units under a prescribed formula, see Educ. Code §16.102(c), but that number will always be less than 12.   Funding for additional personnel units in these districts must come, if at all, from each district's own tax revenues.   The argument appears to be that this system violates the state equal protection clause because it unconstitutionally burdens the taxpayers in the excluded districts and detrimentally affects the quality of education received by the school children in those districts.

We have found no recent case decided by a Texas court in which the court dealt with a challenge to a statute arising under the state equal protection clause in a different manner than federal courts deal with challenges arising under the federal equal protection clause.   In Attorney General Opinion MW-572 (1982), this office summarized the fundamental components of federal equal protection clause analysis:

> For years courts dealt with equal protection challenges to state legislation by utilizing a two-tiered analytical model. Under this model, if a challenged statute burdens an inherently "suspect" class of persons or impinges upon a

"fundamental" constitutional right, it will be struck down unless the government can demonstrate that the law is justified by some compelling need. If, on the other hand, no "suspect" class or "fundamental" right is involved, the statute will be upheld unless the contestant can show that the legislative classification bears no rational relationship to a legitimate state objective. See, e.g., Vance v. Bradley, 440 U.S. 93 (1979); San Antonio Independent School District v. Rodriguez, 411 U.S. 1 (1973); Milligan v. State, 554 S.W.2d 192 (Tex. Crim. App. 1977).

Although the United States Supreme Court may at times apply the two-tiered model, see Clements v. Fashing, 50 U.S.L.W. 4869 (June 25, 1982) (plurality opinion), it also on occasion utilizes a more flexible, three-tiered approach. Under this approach, an intermediate test, which asks whether the challenged legislation "further[s] a substantial interest of the State," Plyler v. Doe, 50 U.S.L.W. 4650, 4654 (June 15, 1982), will be utilized in some instances, apparently when the court believes that the right or the class of persons affected by the challenged statute is, although not "fundamental" or "suspect," nevertheless deserving of special protection. See, e.g., Plyler v. Doe, supra; Craig v. Boren, 429 U.S. 190 (1976). No criteria that would enable one to predict when this intermediate level of scrutiny will be employed have yet been articulated.

In San Antonio Independent School District v. Rodriguez, 411 U.S. 1 (1973), the plaintiffs contended that Texas' method of financing its public school system violates the federal equal protection clause because it results in unequal expenditures among children who happen to reside in different districts. The Supreme Court disagreed. It held that the state financing system does not burden any "suspect" class of persons. In discussing a "fundamental" right to an education the court assessed "whether there is a right to education explicitly or implicitly guaranteed by the Constitution." 411 U.S. at 33. Ultimately it held that there is no such "fundamental" right. Because the state system does not burden any "suspect" class or impinge upon any "fundamental" right, the court applied the "rational basis" test and upheld it.

In Rodriguez, the parties did not challenge the Texas financing system under the state equal protection clause. Accordingly, we are afforded no guidance as to how our courts might have dealt with the

constitutionality of this system under the state constitution.  We have, moreover, found no cases since Rodriguez in which a plaintiff has challenged, under only the state equal protection clause, a Texas statute which affects education.  Such a challenge could, however, be handled differently from a challenge raised under the federal Constitution.

Unlike the federal Constitution, the Texas Constitution does explicitly provide a right to an education.  Tex. Const. art. VII, §1. Accordingly, if, in determining whether an asserted right is "fundamental" under our constitution, our courts would apply the same test used by courts in determining whether rights are fundamental under the federal Constitution, then the right to an education would, under the Texas Constitution, have to be deemed "fundamental."  And if our courts would also analyze questions raised under the state equal protection clause by applying the same test used by courts in analyzing federal equal protection questions, then state constitutional challenges to Texas statutes affecting education would be resolved by applying the "compelling need" test.  But see, e.g., Thompson v. Engelking, 537 P.2d 635 (Idaho 1975) (state supreme court declined to apply two-tiered analytical model in analyzing challenge to state public school financing scheme arising under equal protection clause of Idaho Constitution; instead, it applied "rational basis" test); Robinson v. Cahill, 303 A.2d 273 (N.J. 1973), cert. denied sub. nom., Dickey v. Robinson, 414 U.S. 976 (1973) (rejecting "fundamental right" analysis used in San Antonio Independent School District v. Rodriguez, supra).

In this opinion, we need not decide whether, under the Texas Constitution, education is a "fundamental" right, or whether our courts would deal with state constitutional challenges to state statutes affecting education by applying the "compelling need" test. Even if both questions are answered in the affirmative, we believe that section 16.102(n) would pass constitutional muster.  We will therefore assume, for purposes of this opinion, that both questions would be answered affirmatively.  If the challenged statute survives under the most rigid constitutional test, it will survive if any less stringent test is applied.

It is, in our opinion, not at all difficult to characterize as "compelling" the need for a statutory scheme which effectively requires that, to receive at least 12 personnel units funded by the state, a school district with a K-12 program must have, for each such unit, some minimum average number of students in average daily attendance, and must be 30 miles or more from the nearest high school district.  The state's financial resources are not infinite.  The portion of those resources which can reasonably be allocated to public education is also not infinite.  In our opinion, the state could, if challenged, demonstrate that it has a compelling need for a statute which effectively provides that, for a school district to be

guaranteed a minimum of 12 state-funded personnel units, it must both satisfy the geographical requirement and have, for each such unit, an average of at least 7.5 students in average daily attendance. Indeed, it might be argued that the latter requirement is quite generous, and that the state could justify a statutory scheme premised upon the assumption that an efficient allocation of the state's financial resources requires a substantially greater student/personnel unit ratio.

We also emphasize that even those districts which do not meet the geographical requirement and have fewer than 90 students in average daily attendance are not without state-funded personnel units; they receive a certain number of such units under the section 16.102(c) formula. Finally, districts with fewer than 90 students in ADA which are located 30 miles or more from the nearest high school -- which districts would find it difficult to consolidate with another school district -- are guaranteed a minimum of 12 state-funded personnel units. Thus, only those districts which could easily consolidate with another district but do not do so are excluded from the guarantee of section 16.102(n).

For these reasons, we conclude that even if our courts were to analyze the instant question by applying the "compelling need" test they would hold that section 16.102(n) does not violate the Texas equal protection clause. However, in light of the cited cases from other states that deal with this question, we believe that the application of "compelling need" is doubtful.

We turn next to your argument under article VII, section 1 of the Texas Constitution. In Mumme v. Marrs, 40 S.W.2d 31 (Tex. 1931), the Texas Supreme Court made several important statements concerning this provision. First, it stated that "liberal rules should apply in determining the power of the Legislature with reference to the public school system." 40 S.W.2d at 33. It also said that:

> The Legislature alone is to judge what means are
> necessary and appropriate for a purpose which the
> Constitution makes legitimate. The legislative
> determination of the methods, restrictions, and
> regulations is final, except when so arbitrary as
> to be violative of the constitutional rights of
> the citizen.

40 S.W.2d at 36. Finally, with respect to the portion of article VII, section 1 which directs the legislature to make "suitable provision for the support and maintenance of an efficient system of public free schools," it observed that:

> The word "suitable," used in connection with the
> word "provision" in this section of the

>Constitution, is an elastic term, depending upon the necessities of changing times or conditions, and clearly leaves to the Legislature the right to determine what is suitable, and its determination will not be reviewed by the courts if the act has a real relation to the subject and object of the Constitution.

Id.

It has been suggested that section 16.102(n) prevents the constitutional goal of an "efficient system of public free schools" from being attained. We disagree. If anything, for the reasons discussed above, we believe that a statutory scheme which requires some minimum average number of students in average daily attendance for each state-funded personnel unit enhances the ability of the state to achieve this goal. Such a scheme helps to ensure that the state's finite resources are used where they are needed, rather than utilized to fund more personnel units for a particular district than are reasonably warranted by the number of students in that district. A scheme which would allocate to each school district some guaranteed minimum number of state-funded personnel units, with disregard for the number of students in average daily attendance in that district, could hardly be regarded as "efficient."

As the Mumme court held, the legislature has broad discretion to determine the components of an "efficient system of public free schools." In this instance, it has in effect determined that efficiency requires that there be a least 7.5 students in average daily attendance per each state-funded personnel unit. We believe that such a determination is entirely within its discretion. We therefore conclude that section 16.102(n) does not violate article VII, section 1 of the Texas Constitution.

## S U M M A R Y

>Section 16.102(n) of the Texas Education Code, regarding the Foundation School Program, does not violate the equal protection clause, article I, section 3 of the Texas Constitution, or article VII, section 1 which requires the establishment of an efficient system of public free schools.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Acting Chairman
Jon Bible
David Brooks
Colin Carl
Jim Moellinger
Nancy Sutton